**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 04-1789

GERARD O'NEILL,

Plaintiff, Appellant,

v.

THE NEW YORK TIMES COMPANY AND
THE GLOBE NEWSPAPER COMPANY,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

---

Before

Boudin, Chief Judge,

Cyr, Senior Circuit Judge,

and Lipez, Circuit Judge.

---

Edward J. Dailey, with whom Lisa M. Fleming and Bromberg
Sunstein, LLP were on brief for appellant.
Joan Ackerstein, with whom Gregory I. Rasin, David J. Kerman,
Richard W. Paterniti and Jackson Lewis LLP were on brief for
appellees.

---

August 17, 2005

---

**Per Curiam**.  Gerard O'Neill appeals from a district court judgment dismissing his age discrimination claim against his former employers, the New York Times Company and the Boston Globe Company,[1] pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 et seq., and the Older Workers Benefit Protection Act (OWBPA), 29 U.S.C. § 626(f)(1).  We affirm.

**I**

**BACKGROUND**

O'Neill was employed as a journalist by the Boston Globe for 35 years, eventually becoming the editor of the investigative-journalism unit, known as the "Spotlight Team".  In January 2000, when O'Neill was 58 years old, Globe Editor Matthew Storin notified O'Neill that he planned to remove him from the position of Spotlight Team editor effective January 1, 2001.  Storin stated that he wanted new ideas on the Team, and suggested that O'Neill should consider early retirement rather than transferring to another position at the Globe.  Eventually, Storin offered the Spotlight Team editorship to a 54-year-old employee.

After Globe editors had declined to accept several of O'Neill's proposals for new work assignments, he undertook negotiations with the Globe's human resources department regarding early retirement.  In June 2000, the Globe formulated a Voluntary

---

[1]The New York Times is the parent company of Globe.  For ease in reference, we shall refer to O'Neill's employer as "the Globe".

-2-

Early Retirement Program (the 2000 VERP), targeting those non-union employees who were at least 52 years of age, who had at least twenty years of service, and who would not have to be replaced in the positions they occupied at the time they opted for early retirement. In September 2000, the Globe offered the VERP to O'Neill, as well as sixteen other employees who purportedly met the eligibility requirements. The Globe provided each of these employees with written notification, as required by the OWBPA, listing the job positions, ages, and years of service of the seventeen eligible employees, as well as of those Globe employees with the same job titles who did not meet the VERP eligibility requirements. Additionally, the VERP included a general release and waiver of the employees' ADEA rights. See 29 U.S.C. § 626(f). The notification advised employees to consult an attorney before making the "important decision" whether to accept the VERP. Only five of the employees, including O'Neill, opted to take early retirement under the 2000 VERP. Nonetheless, O'Neill "saw [the VERP] as a coerced retirement, because it was the only other option to doing a take-it-or-leave-it reduced retirement after 35 years of meritorious work for the Globe." O"Neill retired effective January 2001.

The following year, the Globe once again offered a VERP to its employees. When O'Neill learned of the terms of the 2001 VERP, which he considered more lucrative than those in the 2000

VERP, he was of the mind "that somehow [he]'d been treated differently because of [his] age," and he contacted an attorney. The Globe rejected O'Neill's requests that he be permitted to participate in the 2001 VERP, rather than the 2000 VERP. On May 3, 2002, O'Neill's attorney transmitted a draft complaint to the Globe, alleging that its use of the 2000 and 2001 VERPs constituted illegal age discrimination. Nevertheless, O'Neill filed no charge with the Massachusetts Commission Against Discrimination (MCAD) until May 5, 2003.

In August 2003, O'Neill filed an action for damages against the Globe in state court, alleging that the 2000 VERP had materially omitted or misrepresented facts that the Globe was obligated to disclose under the OWBPA. The Globe removed the action to federal district court. In an amended complaint, O'Neill alleged, inter alia, that the Globe had violated the ADEA by including him as one of the seventeen employees eligible to participate, and that it had violated the OWBPA by providing inadequate disclosures in the 2000 VERP documents.

Following discovery and a hearing, the district court entered summary judgment for the Globe, based inter alia on two independent grounds: (i) the general release of ADEA rights contained in the 2000 VERP was "knowing and voluntary," hence enforceable under 29 U.S.C. § 626(f); and (ii) the ADEA claim was time-barred in that O'Neill failed to file an administrative

complaint with the MCAD within 300 days of the alleged injury, as required by 29 U.S.C. § 626(d)(2).

## II

## DISCUSSION

On appeal, O'Neill primarily focuses upon whether the 2000 VERP provided sufficient disclosures of information as required under the OWBPA. It is unnecessary to address these issues, however, inasmuch as the district court correctly determined that the O'Neill ADEA claim is time-barred by the statute of limitations in 29 U.S.C. § 626(d)(2).

We review the summary judgment ruling de novo, viewing all evidence and reasonable inferences therefrom in the light most favorable to the non-moving party, in order to determine whether there exists a trialworthy issue of material fact, and the moving party is entitled to judgment as a matter of law. See Megwinoff v. Banco Bilbao Vizcaya, 233 F.3d 73, 74 (1st Cir. 2000).

The O'Neill ADEA claim unquestionably is time-barred. Subsection 626(d)(2) requires that an employee file a charge with the EEOC within 300 days "after the alleged unlawful practice occurred."[2] Although O'Neill alleges that the Globe coerced him into early retirement in 2000 (e.g., "I accepted the 2000 buyout,

---

[2]The claim O'Neill filed in May 2003 with the MCAD would have served as a simultaneous filing with the EEOC as well. See Davis v. Lucent Techs., Inc., 251 F.3d 227, 230 (1st Cir. 2001) (citing 29 C.F.R. § 1601.13(a)(4)).

-5-

even though I saw it as a coerced retirement."), he failed to submit an MCAD charge until May 2003. An employee who is presented with such a take-it-or-leave-it retirement package is thereupon deemed on notice of the <u>fact</u> of his injury for purposes of commencing the limitations period in subsection 626(d)(2). <u>See</u>, <u>e.g.</u>, <u>Am. Airlines, Inc.</u> v. <u>Cardoza-Rodriguez</u>, 133 F.3d 111, 122-23 (1st Cir. 1998).

O'Neill maintains that he did not know until discovery occurred in the present action that the Globe deliberately withheld pertinent information from the 2000 VERP documents which should have been disclosed by the Globe under the OWBPA. An employee need not possess all the pertinent facts of an employer's alleged discriminatory action in order to commence the running of the limitations period. Rather, it is enough that he "knows that he has been hurt and also knows that his employer has inflicted the injury." <u>Morris</u> v. <u>Gov't Dev. Bank of P.R.</u>, 27 F.3d 746, 750 (1st Cir. 1994); <u>see</u> <u>Am. Airlines</u>, 133 F.3d at 123 (noting that employees had sufficient information once employer presented them with a retirement package on a "take it or leave it" basis, <u>viz.</u>, retire or lose your job). Furthermore, when O'Neill learned that the 2001 VERP allegedly contained more lucrative terms, he concededly thought "that somehow [he]'d been treated differently because of [his] age," and he contacted an attorney. Yet he filed no administrative charge until <u>May 5, 2003</u>, well beyond the time

prescribed by subsection 626(d)(2).

Finally, O'Neill endeavors to evade the clear constraints prescribed in the limitations provision by invoking the principle of equitable tolling. O'Neill contends that, given the fact that the Globe deliberately withheld from the VERP documents information which the Globe was required to disclose under the OWBPA, he was unable to ascertain that crucial, undisclosed information until he conducted discovery in the course of this lawsuit, and hence could not know whether or not he had any viable ADEA claim. This claim fails as well.

Equitable tolling applies only if the employee is aware of his ADEA rights, yet fails to file a timely administrative charge due to reasonable reliance upon the employer's deceptive conduct. Such employer deception must <u>exceed</u> any alleged deception that is part and parcel of the ADEA claim itself (<u>viz.</u>, the Globe's alleged failure to disclose in the 2000 VERP the facts which are required by the OWBPA), <u>see</u> <u>American Airlines</u>, 133 F.3d at 124 (noting that plaintiffs "simply parroted the same events that gave rise to their underlying claim: that American misled them as to the reason for the VERP"), and must have succeeded in "'lull[ing] the plaintiff[] into believing that it was not necessary for [him] to commence litigation,'" <u>id.</u> (citation omitted). However, O'Neill, who signed a release of his ADEA rights, has alleged no such deceptive or dilatory practices on the part of the Globe.

Thus, the subsection 626(d)(2) limitations period was never equitably tolled.

For the foregoing reasons, the district court judgment is **<u>Affirmed</u>**.